**EXHIBIT A**

1 | Robert F. Clarke, Esq. (CSBN 79881)
**PHILLIPS & ASSOCIATES**
2 | 3030 North Third Street, Suite 1100
Phoenix, Arizona 85012
3 | Tel:    (602) 258-8900 ext. 295
Fax:    (602) 279-9155
4 | E-Mail:    bobc@phillipslaw.ws

5 | Attorneys for Plaintiffs



6 | **SUPERIOR COURT OF CALIFORNIA**

7 | **COUNTY OF SAN FRANCISCO**

8 | MELONEY WRIGHT and DONNY
WRIGHT, wife and husband; DANYELE
9 | BACON, a single woman; DIANA BURK, a
single woman; TINA LEIPHART, a single
10 | woman; NUBIA FLORES, a single woman;
MOLLY KIRKPATRICK, a single woman;
11 | REYNALDA ALVARADO, a single
woman; GAYLE ANDERSON, a single
12 | woman; VERONIQUE PETERS and
DONNY PETERS, wife and husband;
13 | LAKEYA BASKOM, a single woman;
TIFFANY LILLIE, a single woman, and
14 | LORRAINE FONTANILLA-WEBBER, on
behalf of her minor daughter, ASHLEY
15 | WEBBER,

16 |                 Plaintiffs,

17 | vs.

18 | ORTHO-MCNEIL CORPORATION, a
foreign corporation; JOHNSON &
19 | JOHNSON, a foreign corporation;
JOHNSON & JOHNSON SERVICES,
20 | INC., a foreign corporation; JOHNSON &
JOHNSON HEALTH CARE SYSTEMS,
21 | INC., a foreign corporation; JOHNSON &
JOHNSON RESEARCH &
22 | DEVELOPMENT, LLC., a foreign
corporation; JOHNSON & JOHNSON
23 | CONSUMER COMPANIES, INC., a
foreign corporation; MCKESSON
24 | CORPORATION, a Delaware corporation;
ALZA CORPORATION, a California
25 | corporation aka ALZA DEVELOPMENT
aka ALZA INTERNATIONAL, INC., and
26 | DOES 1-50,

No. CGC07 - 460483

**COMPLAINT FOR DAMAGES**

and

CGC07 - 460481
**DEMAND FOR JURY TRIAL**

1
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1

| Defendants.

2

For their Complaint against the defendants, Plaintiffs allege:

3

## PARTIES

4

1.    Plaintiff MELONEY WRIGHT and DONNY WRIGHT are wife and husband

5

and citizens of the State of California.  Meloney Wright was prescribed and used Ortho

6

Evra™.

7

2.    Plaintiff DANYELE BACON is a citizen of the State of California, and was

8

prescribed and used Ortho Evra™.

9

3.    Plaintiff DIANA BURK is a citizen of the State of Arizona, and was prescribed

10

and used Ortho Evra™.

11

4.    Plaintiff TINA LEIPHART is a citizen of the State of Arizona, and was

12

prescribed and used Ortho Evra™.

13

5.    Plaintiff NUBIA FLORES is a citizen of the State of Arizona, and was

14

prescribed and used Ortho Evra™.

15

6.    Plaintiff MOLLY KIRKPATRICK is a citizen of the State of Arizona, and was

16

prescribed and used Ortho Evra™.

17

7.    Plaintiff REYNALDA ALVARADO is a citizen of the State of Arizona, and

18

was prescribed and used Ortho Evra™.

19

8.    Plaintiff GAYLE ANDERSON is a citizen of the State of Iowa, and was

20

prescribed and used Ortho Evra™.

21

9.    Plaintiff LAKEYA BASKOM is a citizen of the State of Arizona, and was

22

prescribed and used Ortho Evra™.

23

10.    Plaintiff TIFFANY LILLIE is a citizen of the State of Arizona, and was

24

prescribed and used Ortho Evra™.

25

11.    Plaintiffs VERONIQUE PETERS and DONNY PETERS are wife and husband

26

2

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 | and citizens of the State of Arizona, and Plaintiff Veronique Peters was prescribed and used
2 | Ortho Evra™.

3 |     12.    Plaintiff LORRAINE FONTANILLA-WEBBER is a citizen of the State of
4 | Arizona, and brings this action on behalf of her minor daughter, ASHLEY WEBBER, who
5 | was prescribed and used Ortho Evra™.

6 |     13.    Johnson & Johnson (hereafter, "Johnson & Johnson"), is a corporation
7 | organized and existing under the laws of the State of New Jersey, with its principal place of
8 | business in New Jersey. Johnson & Johnson was and is authorized to do business in the State
9 | of California and was engaged in substantial commerce and business activity in the County
10 | of San Francisco.

11 |     14.    Johnson & Johnson., a foreign corporation; Johnson & Johnson Services, Inc.,
12 | Johnson & Johnson Health Care Systems, Inc., Johnson & Johnson Research &
13 | Development, LLC., and Johnson & Johnson Consumer Companies, Inc., are divisions of
14 | Johnson & Johnson, are either organized under the laws of California, New Jersey or
15 | Delaware, and are named herein as other companies very closely related to Johnson &
16 | Johnson, and who may also have been involved in the design, promotion, sale, and/or
17 | distribution of Ortho Evra™, and will be referred to collectively as "Johnson & Johnson",
18 | until such time as their involvement becomes more evident.

19 |     15.    Defendant McKesson Corporation (hereafter, "McKesson") was and is a
20 | corporation organized and existing under the laws of the State of Delaware, with its principal
21 | place of business in San Francisco, California.  McKesson was and is authorized to do
22 | business in the State of California and was engaged in substantial commerce and business
23 | activity in the County of San Francisco.

24 |     16.    Defendant Alza Corporation (hereafter, "Alza") was and is a corporation
25 | organized and existing under the laws of the State of Delaware, with its principal place of
26 | business in San Jose, California, was and is authorized to do business in the State of

3

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1 || California, is a subsidiary corporation of Defendant Johnson & Johnson and was engaged in

2 || substantial commerce and business activity in the County of San Francisco.

3 ||       17.    Ortho-McNeil (hereafter, "Ortho-McNeil") is a corporation organized and

4 || existing under the laws of the State of New Jersey, with its principal place of business in

5 || New Jersey, was and is authorized to do business in the State of California, is a subsidiary

6 || corporation of Defendant Johnson & Johnson, and was engaged in substantial commerce and

7 || business activity in the County of San Francisco.

8 ||       18.    The true names or capacities, whether individual, corporate, or otherwise, of

9 || Defendants Does 1-50, are unknown to Plaintiffs who therefore sue said Defendants by such

10 || fictitious names. Plaintiffs believe and allege that each of the Defendants designated herein

11 || by fictitious names is in some manner legally responsible for the events and happenings

12 || herein referred to and proximately caused foreseeable damages to Plaintiffs as alleged herein.

13 ||       19.    At all times herein mentioned, "Defendants" include all named Defendants

14 || herein as well as Defendants Does 1-50.

15 ||       20.    At all relevant times Defendants, through their agents, servants, employees and

16 || apparent agents, were the designers, manufacturers, marketers, distributors and/or sellers of

17 || Otho Evra™, which is the only birth control drug which is delivered by a transdermal patch.

18 ||       21.    Defendants, either directly or through their agents, apparent agents, servants

19 || or employees, at all relevant times, sold and distributed Ortho Evra™ in the States of

20 || California, Arizona, Mississippi, Iowa, and in other states and foreign countries.

21 ||       22.    Defendants derive substantial revenue from pharmaceutical products used or

22 || consumed in the State of California.

23 ||       23.    Defendants expected or should have expected, that their business activities

24 || could or would have consequences within the State of California, as well as throughout the

25 || United States.

26 ||       24.    Plaintiffs bring this action to recover damages, restitution, refunds, loss of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  consortium and/or for equitable, injunctive and declaratory relief against Defendants.

2      25.    Defendants placed Ortho Evra™ into the stream of worldwide commerce and

3  interstate commerce in the United States.  It did so without adequate testing and with no

4  warning that the drug carried with it a risk of causing thromboembolytic and myocardial

5  events, far in excess of those risks associated with other forms of birth control.

6      26.    Plaintiffs need continued medical monitoring to prevent or mitigate the future

7  onset of thromboembolytic and myocardial events which have already manifested.

8      27.    Defendants did directly and/or through authorized agents, sell and/or distribute

9  Ortho Evra™ to each individual Plaintiff.

10  ### SUMMARY OF THE CASE

11      28.    Defendants, either directly or through their agents, apparent agents, servants

12  or employees, designed, manufactured, marketed, advertised, distributed and sold Ortho

13  Evra™ as the only transdermal delivery birth control device.

14      29.    As a result of the defective nature of Ortho Evra™, persons who were

15  prescribed and used Ortho Evra™, including Plaintiffs, have suffered and may continue to

16  suffer severe and permanent personal injuries, including, but not limited to,

17  thromboembolytic and myocardial events.

18      30.    Defendants concealed and continue to conceal their knowledge of Ortho

19  Evra™'s unreasonably dangerous risks from Plaintiffs, other consumers, and the medical

20  community.

21      31.    Defendants failed to conduct adequate and sufficient post marketing

22  surveillance of Ortho Evra™ after it began marketing, advertising, distributing, and selling

23  the drug.

24      32.    As a result of Defendants' actions and inaction, Plaintiffs were injured due to

25  use of Ortho Evra™, which has caused and will continue to cause Plaintiffs various injuries

26  and damages.  Plaintiffs accordingly seek compensatory damages.

## FACTUAL BACKGROUND

33.    At all relevant times Defendants were responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing , and selling Ortho Evra™.

34.    In 2002, the United States Food and Drug Administration ("FDA") approved Ortho Evra™ as a transdermal delivery system of hormone replacement birth control, but that Defendants intentionally/recklessly and/or negligently, did not give the FDA complete and adequate information upon which the FDA could have made a complete and adequate evaluation of this drug, and had the FDA been given such information, the label and/or warnings, would have been different and/or the approval would not have occurred.

35.    At all times pertinent, agents of Defendants did act in concert to sell and promote Ortho Evra™.

36.    Before, during and after Ortho Evra™ was introduced, promoted and sold, key agents of Defendants who knew or should have known of the dangerous propensities of Ortho Evra™, went to work for other named Defendants, and continued to introduce, promote, sell and distribute Ortho Evra™.

37.    Despite test results indicating an increased risk of thrombolytic events, the warnings associated with Ortho Evra™ ignored those facts.

38.    Throughout the early years of it's distribution, medical articles and studies appeared reporting the frequent and common occurrence of clotting and heart problems associated with women who were on Ortho Evra™, at rates far higher than associated with other oral contraceptives.

39.    Defendants knew and or should have known that such reports indicated Ortho Evra™ was the cause of these problems and that the risks associated with use were far outweighed by the convenience of the use of a transdermal delivery system with the formulation of Ortho Evra™.

40.    Defendants claim that Ortho Evra™ helps prevent pregnancy the same way

6

1 birth control pills do by preventing ovulation, by thickening the cervical mucus, and by

2 changing the endometrium to reduce the chance of implantation.

3     41.    Unlike birth control pills, the Ortho Evra™ birth control patch is transdermal,

4 meaning continuous levels of the hormones norelgestromin and ethinyl estradiol (progestin

5 and estrogen, respectively) are delivered through the skin into the bloodstream, so that the

6 amount of hormone delivered is far higher than ordinary oral contraceptives.

7     42.    On November 10, 2005, in the face of extreme pressure from the FDA,

8 Defendants updated the prescribing information for Ortho Evra™ to include a new warning

9 and provide additional information on the differences between Ortho Evra™ in a weekly

10 transdermal delivery system and a daily oral delivery system. The new warning states:

11     The pharmacokinetic (PK) profile for the Ortho Evra™ patch
is different from the PK profile for oral contraceptives in that it

12     has higher steady state concentrations and lower peak
concentrations. AUC and average concentration at steady state

13     for ethinyl estradiol (EE) are approximately 60% higher in
women using Ortho Evra™ compared with women using an oral

14     contraceptive containing EE 35 mg. In contrast, peak
concentrations for EE are approximately 25% lower in women

15     using Ortho Evra™. Inter-subject variability results in increased
exposure to EE in some women using either Ortho Evra™ or

16     oral contraceptives. However, inter-subject variability in women
using Ortho Evra™ is higher. In general, increased estrogen

17     exposure may increase the risk of adverse events. However, it is
not known whether there are changes in the risk of serious

18     adverse events based on the differences in pharmacokinetic
profiles of EE in women using Ortho Evra™ compared with

19     women using oral contraceptives containing 35mg of EE.

20     43.    The new label dated November 10, 2005, also contains a new section entitled

21 "Transdermal versus Oral Contraceptives." In a study of 32 healthy female volunteers, it was

22 found that the overall exposure for NGMN [norelgestromin] and EE [ethinyl estradiol] (AUC

23 and Css) was higher in subjects treated with Ortho Evra™ for both Cycle 1 and Cycle 2,

24 compared to that for the oral contraceptive, while Cmax values were higher in subjects

25 administered the oral contraceptive. Under steady-state conditions, $AUC0-168$ and Ccss,

26 EE were approximately 55% and 60% higher, respectively, for the transdermal patch, and the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  Cmax was about 35% higher for the oral contraceptive, respectively. Inter-subject variability
2  (%CV) for the PK parameters following delivery from Ortho Evra™ was higher relative to
3  the variability determined from the oral contraceptive.

4      44.    The November 10, 2005 label also provides that in the study of 32 healthy
5  female volunteers, the percent change in systemic estrogenic activity related to the Sex
6  Hormone Binding Globulin (SHBG) was higher for Ortho Evra™ users compared to women
7  taking the oral contraceptive.

8      45.    In the face of the problems associated with the formulation of Ortho Evra™,
9  Defendants changed the formulation and warnings in the Canadian equivalent of Ortho
10  Evra™, but did not do the same in the United States.

11     46.    Defendants did knowingly and/or negligently and/or recklessly and/or
12  maliciously employ qualified and unqualified researchers who falsely and/or negligently
13  and/or maliciously, ignored the dangers associated with Ortho Evra™ at a time when
14  Defendants could have avoided injuries sustained by these Plaintiffs.

15     47.    Defendants did employ qualified and unqualified researchers who
16  systematically ignored the dangers associated with Ortho Evra™ and falsely and/or
17  negligently and/or recklessly and/or maliciously reported to Defendants, the FDA, health care
18  providers and the public that the risks associated with Ortho Evra™ were the same as any
19  other form of hormonal replacement birth control drug.

20     48.    Defendants knew of the significant risk of dental and oral complications caused
21  by use of Ortho Evra™, but Defendants did not adequately and sufficiently warn consumers,
22  including Plaintiffs, or the medical community, of such risk.

23     49.    As a direct result, Plaintiffs were prescribed Ortho Evra™ and have been
24  permanently and severely injured, having suffered serious consequences from the use of
25  Ortho Evra™. Plaintiffs require and will in the future require ongoing medical care and
26  treatment.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

50.     Plaintiffs has suffered mental anguish from the knowledge that Plaintiffs will have life-long complications as a result of the injuries Plaintiffs sustained from the use of Ortho Evra™.

51.     Plaintiffs were prescribed and used Ortho Evra™ in a foreseeable manner pursuant to their respective prescriptions.

52.     Plaintiffs, as a direct and proximate result of using Ortho Evra™, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

53.     Plaintiffs used Ortho Evra™ which had been provided in a condition that was substantially the same as the condition in which it was manufactured and sold.

54.     Plaintiffs would not have used Ortho Evra™ had Defendants properly disclosed the risks associated with the drug. Alternatively, Plaintiffs would have known and/or recognized the precursors to thrombolytic and myocardial events, they may have been able to avoid the clinical manifestation of these problems.

55.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and their physicians the true and significant risks associated with taking Ortho Evra™. The running of any applicable Statute of Limitations has been tolled by reason of Defendants' fraudulent concealment.

56.     As a result of Defendants' actions, Plaintiffs and prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risk identified in this complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

57.     Defendants actions amounted to overpromotion.

58.     Defendants actions do not meet the criteria necessary to overcome the "Reasonable Expectations Doctrine".

## FIRST CAUSE OF ACTION
### (Negligence)

59.     Plaintiffs restate the allegations set forth above as if fully rewritten herein.

60.     Defendants owed Plaintiffs, and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and/or selling Ortho Evra™.

61.     Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

a.      Failing to properly and thoroughly test Ortho Evra™ before releasing the drug to market;

b.      Failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of Ortho Evra™;

c.      Failing to conduct sufficient post-market testing and surveillance of Ortho Evra™;

d.      Designing, manufacturing, marketing, advertising, distributing, and selling Ortho Evra™ to consumers, including Plaintiffs, without an adequate warning of the significant and dangerous risks of Ortho Evra™ and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e.      Failing to exercise due care when advertising and promoting Ortho Evra™; and,

f.      Negligently continuing to manufacture, market, advertise, and distribute Ortho Evra™ after Defendants knew or should have known of its adverse effects.

62.     As a direct and proximate consequence of Defendants' actions, omissions, and misrepresentations, Plaintiffs suffered serious personal injuries. In addition, Plaintiffs required and will continue to require healthcare and services. Plaintiffs have incurred and will continue to incur medical and related expenses. Plaintiffs also have suffered and will

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life,

2  increased risk of premature death, aggravation of preexisting conditions and activation of

3  latent conditions, and other losses and damages.  Plaintiffs have incurred and will continue

4  to incur direct medical losses and costs include care for hospitalization, physician care,

5  monitoring, treatment, medications, and supplies.  Plaintiffs have incurred and will continue

6  to incur mental and physical pain and suffering.  Plaintiffs have suffered loss of wages and

7  wage-earning capacity.

8      63.    Defendants' conduct as described above was committed with knowing,

9  conscious, wanton, willful, and deliberate disregard for the value of human life and the rights

10  and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages

11  so as to punish Defendants and deter them from similar conduct in the future.

12      **WHEREFORE,** Plaintiffs demand judgment against Defendants and seek

13  compensatory damages, and exemplary and punitive damages together with interest, the costs

14  of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

15              <u>**SECOND CAUSE OF ACTION**</u>
                    <u>**(Products Liability)**</u>
16

17      64.    Plaintiffs restate the allegations set forth above as if fully rewritten herein.

18      65.    Defendants manufactured, sold, distributed, marketed, and/or supplied Ortho

19  Evra™ in a defective and unreasonably dangerous condition to consumer, including
   Plaintiffs.
20

21      66.    Defendants designed, manufactured, sold, distributed, supplied, marketed,

22  and/or promoted Ortho Evra™, which was expected to reach and did in fact reach

23  consumers, including Plaintiffs, without substantial change in the condition in which it was

24  manufactured and sold by Defendants.

25      67.    Plaintiffs used Ortho Evra™ as prescribed and in a manner normally intended,

26  recommended, promoted and marketed by Defendants.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

68.  Ortho Evra™ failed to perform safely when used by ordinary consumers, including Plaintiffs, including when it was used as intended and in a reasonably foreseeable manner.

69.  Ortho Evra™ was defective in its design and was unreasonably dangerous in that its risks exceeded the benefits associated with its design or formulation.

70.  Ortho Evra™ was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

71.  Ortho Evra™ was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiffs, of the risks described herein, including, but not limited to, the risk of thromboembolic and/or thrombolytic events.

72.  Although Defendants knew or should have known of the defective nature of Ortho Evra™, it continued to design, manufacture, market, and sell Ortho Evra™ so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendants acted with conscious and deliberate disregard of the foreseeable harm caused by Ortho Evra™.

73.  Plaintiffs could not, through the exercise of reasonable care, have discovered Ortho Evra™'s defects or perceived the dangers posed by the drug.

74.  As a direct and proximate consequence of Defendants' conduct, Plaintiffs suffered serious personal injuries. In addition, Plaintiffs required and will continue to require healthcare. Plaintiffs have incurred and will continue to incur medical and related expenses, Plaintiffs also have suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages Plaintiffs' direct medical losses and costs include care for hospitalization, physician care,

12

1 monitoring, treatment, medications, and supplies. Plaintiffs incurred and will continue to

2 incur mental and physical pain and suffering. Plaintiffs suffered loss of wages and

3 wage-earning capacity.

4     75.    Defendants' conduct as described above was committed with knowing,

5 conscious, wanton, willful, and deliberate disregard for the value of human life and the rights

6 and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages

7 so as to punish Defendants and deter them from similar conduct in the future.

8     **WHEREFORE,** Plaintiffs demand judgment against Defendants and seek

9 compensatory damages, and exemplary and punitive damages together with interest, the costs

10 of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

11         **THIRD CAUSE OF ACTION**
        **(Breach of Express Warranty)**

12

13     76.    Plaintiffs restate the allegations set forth above as if fully rewritten herein.

14     77.    Defendants expressly represented to Plaintiffs and other consumers and the

15 medical community that Ortho Evra™ was safe and fit for its intended purposes, that it was

16 of merchantable quality, that it did not produce any dangerous side effects, and that it was

17 adequately tested.

18     78.    Ortho Evra™ does not conform to Defendants' express representations because

19 it is not safe, has numerous and serious side effects, and causes severe and permanent

20 injuries.

21     79.    At all relevant times Ortho Evra™ did not perform as safely as an ordinary

22 consumer would expect, when used as intended or in a reasonably foreseeable manner.

23     80.    Plaintiffs, other consumers, and the medical community relied upon

24 Defendants' express warranties.

25     81.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered

26 serious personal injuries. In addition, Plaintiffs required and will continue to require

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  healthcare and services. Plaintiffs incurred and will continue to incur medical and related

2  expenses. Plaintiffs also suffered and will continue to suffer diminished capacity for the

3  enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation

4  of preexisting conditions and activation of latent conditions, and other losses and damages.

5  Plaintiffs have incurred, and will continue to incur, direct medical losses and costs include

6  care for hospitalization, physician care, monitoring, treatment, medications, and supplies.

7  Plaintiffs incurred and will continue to incur mental and physical pain and suffering.

8  Plaintiffs have suffered loss of wages and wage-earning capacity.

9      82. Defendants' conduct as described above was committed with knowing,

10  conscious, wanton, willful, and deliberate disregard for the value of human life and the rights

11  and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages

12  so as to punish Defendants and deter them from similar conduct in the future.

13      **WHEREFORE**, Plaintiffs demand judgment against Defendants and seeks

14  compensatory damages, and exemplary and punitive damages together with interest, the costs

15  of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

16  **FOURTH CAUSE OF ACTION**<br>**(Breach of Implied Warranty)**

17

18      83. Plaintiffs restate the allegations set forth above as if fully rewritten herein.

19      84. Defendants manufactured, distributed, advertised, promoted and sold Ortho
Evra™.

20

21      85. At all relevant times, Defendants knew of the use for which Ortho Evra™ was

22  intended and impliedly warranted the product to be of merchantable quality and safe and fit
for such use.

23

24      86. Defendants were aware that consumers, including Plaintiffs, would use Ortho
Evra™ for treatment of osteoporosis and for other purposes.

25

26      87. Plaintiffs and the medical community reasonably relied upon the judgment and

14

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  sensibility of Defendants to sell Ortho Evra™ only if it was indeed of merchantable quality

2  and safe and fit for its intended use.

3    88.    Defendants breached their implied warranty to consumers, including Plaintiffs;

4  Ortho Evra™ was not of merchantable quality or safe and fit for its intended use.

5    89.    Consumers, including Plaintiffs, and the medical community, reasonably relied

6  upon Defendants' implied warranty for Ortho Evra™.

7    90.    Ortho Evra™ reached consumers without substantial change in the condition

8  in which it was manufactured and sold by Defendants.

9    91.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered

10  serious personal injuries.  In addition, Plaintiffs required and will continue to require

11  healthcare and services.  Plaintiffs incurred and will continue to incur medical and related

12  expenses.  Plaintiffs also suffered and will continue to suffer diminished capacity for the

13  enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation

14  of preexisting conditions and activation of latent conditions, and other losses and damages.

15  Plaintiffs have incurred, and will continue to incur,  direct medical losses and costs include

16  care for hospitalization, physician care, monitoring, treatment, medications, and supplies.

17  Plaintiffs incurred and will continue to incur mental and physical pain and suffering.

18  Plaintiffs have suffered loss of wages and wage-earning capacity.

19    92.    Defendants' conduct as described above was committed with knowing,

20  conscious, wanton, willful, and deliberate disregard for the value of human life and rights

21  and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages

22  so as to punish Defendant and deter it from similar conduct in the future.

23    **WHEREFORE**, Plaintiffs demand judgment against Defendants and seek

24  compensatory damages, and exemplary and punitive damages together with interest, the costs

25  of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

26  / / /

### FIFTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

93.     Plaintiffs restate the allegations set forth above as if fully rewritten herein.

94.     Defendants made fraudulent misrepresentations with respect to Ortho Evra™ in the following particulars:

      a.     Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that Ortho Evra™ had been tested and found to be safe and effective for the treatment and prevention of osteoporosis; and

      b.     Defendants represented that Ortho Evra™ was safer than other alternative medications.

95.     Defendants knew that their representations were false, yet they willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of Ortho Evra™ to consumers, including Plaintiffs, and the medical community.

96.     The representations were made by Defendants with the intent that doctors and patients, including Plaintiffs, rely upon them.

97.     Defendants' representations were made with the intent of defrauding and deceiving Plaintiffs, other consumers, and the medical community to induce and encourage the sale of Ortho Evra™.

98.     Plaintiffs' doctors, and others relied upon the representations.

99.     Defendants' fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety and welfare of consumers, including Plaintiffs.

100.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered serious personal injuries. In addition, Plaintiffs required and will continue to require

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1  healthcare and services.  Plaintiffs incurred and will continue to incur medical and related

2  expenses.  Plaintiffs also suffered and will continue to suffer diminished capacity for the

3  enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation

4  of preexisting conditions and activation of latent conditions, and other losses and damages.

5  Plaintiffs have incurred, and will continue to incur, direct medical losses and costs include

6  care for hospitalization, physician care, monitoring, treatment, medications, and supplies.

7  Plaintiffs incurred and will continue to incur mental and physical pain and suffering.

8  Plaintiffs have suffered loss of wages and wage-earning capacity.

9      101.   Defendants' conduct as described above was committed with knowing,

10  conscious, wanton, willful, and deliberate disregard for the value of human life and the rights

11  and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages

12  so as to punish Defendant and deter it from similar conduct in the future.

13      **WHEREFORE,** Plaintiffs demand judgment against Defendants and seek

14  compensatory damages, and exemplary and punitive damages together with interest, the costs

15  of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

16                     **SIXTH CAUSE OF THE ACTION**
                        **(Fraudulent Concealment)**
17

18      102.   Plaintiffs restate the allegations set forth above as if fully rewritten herein.

19      103.   Defendants made fraudulent misrepresentations with respect to Ortho Evra™

20  in the following particulars:

21          a.     Defendants represented through its labeling, advertising, marketing

22  materials, detail persons, seminar presentations, publications, notice letters, and regulatory

23  submissions that Ortho Evra™ was safe and fraudulently withheld and concealed information

24  about the substantial risks of using Ortho Evra™; and

25          b.     Defendants represented that Ortho Evra™ was safer than other

26  alternative medications and fraudulently concealed information which demonstrated that

1  Ortho Evra™ was not safer than alternatives available on the market.

2      104.  Defendants had sole access to material facts concerning the dangers and
3  unreasonable risks of Ortho Evra™.

4      105.  The concealment of information by Defendants about the risks of Ortho Evra™
5  was intentional, and the representations made by Defendants were known by Defendants to
6  be false.

7      106.  The concealment of information and the misrepresentations about Ortho
8  Evra™ were made by Defendants with the intent that doctors and patients including
9  Plaintiffs, rely upon them.

10     107.  Plaintiffs' doctors, and others relied upon the representations and were unaware
11 of the substantial dental and oral risks of Ortho Evra™ which Defendants concealed from
12 Plaintiffs' doctors and Plaintiffs.

13     108.  As a direct and proximate result of Defendants' actions, Plaintiffs suffered
14 serious personal injuries.  In addition, Plaintiffs required and will continue to require
15 healthcare and services.  Plaintiffs incurred and will continue to incur medical and related
16 expenses.  Plaintiffs also suffered and will continue to suffer diminished capacity for the
17 enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation
18 of preexisting conditions and activation of latent conditions, and other losses and damages.
19 Plaintiffs have incurred, and will continue to incur, direct medical losses and costs include
20 care for hospitalization, physician care, monitoring, treatment, medications, and supplies.
21 Plaintiffs incurred and will continue to incur mental and physical pain and suffering.
22 Plaintiffs have suffered loss of wages and wage-earning capacity.

23     109.  Defendants' conduct as described above was committed with knowing,
24 conscious, wanton, willful, and deliberate disregard for the value of human life and the rights
25 and safety of consumers such as Plaintiffs, thereby entitling Plaintiffs to punitive damages
26 so as to punish Defendant and deter it from similar conduct in the future.

18
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    **WHEREFORE**, Plaintiffs demand judgment against Defendants and seek

2    compensatory damages, and exemplary and punitive damages together with interest, the costs

3    of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

4                        **SEVENTH CAUSE OF ACTION**
                              **(Equitable Relief)**
5              **(Medical Monitoring Program and Proper Labeling)**

6        110.   Plaintiffs restate the allegations set forth above as it fully rewritten herein.

7        111.   As a direct and proximate result of Defendants' acts, Plaintiffs face an

8    increased susceptibility to injuries as described herein. The irreparable threat to their health

9    can only be mitigated by the creation of a medical monitoring fund to provide for a medical

10   monitoring program, including: notifying Plaintiffs and subclasses of the defects and the

11   potential medical harm; funding of a program for the surgical treatment of thrombolytic

12   events; funding a study for the long term effects of Ortho Evra™ upon Plaintiffs; gathering

13   and forwarding to treating physicians information relating to the diagnosis and treatment of

14   injuries which may result from the product; and funding for diagnosis and preventative

15   medical treatment, particularly dental and oral monitoring.

16       112.   Plaintiffs have no adequate remedy in law in that monetary damages alone do

17   not compensate for the insidious and continuing nature of the harm to them, and only a

18   medical monitoring program which notified Plaintiffs and aids in correcting the problems can

19   prevent the greater harms which may not occur immediately and which may be preventable,

20   if proper research is conducted and the health risk are diagnosed and treated before they

21   occur or become worse.

22       113.   Plaintiffs suffered irreparable harm as alleged herein and, in the absence of

23   equitable relief, Plaintiffs will suffer further irreparable harm such as death and severe and

24   debilitating injuries from continued retention of the defective drug. Without a medical

25   monitoring program, Plaintiffs might not receive prompt medical care which could prolong

26   their productive lives, increase prospects for improvement and minimize disability.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

114.    Additionally, Defendants have refused to fully abide by the FDA's request to amend the Ortho Evra™ product labeling information to warn physicians and patients about the risk of thrombolytic events. Because of their failure, prescribing physicians are unable to warn patients to be aware of precursor symptoms which, if properly observed and reported to the physician, could result in discontinuation of Ortho Evra™ therapy and the prevention or mitigation of serious injury, including thrombolytic events. This Court should use its equitable powers, in the interest of the public safety and in order to make sure that prescribing physicians have a complete understanding of the risks associated with Ortho Evra™ to require Defendant to change its label in a format approvable by the FDA to adequately warn physicians and Ortho Evra™ patients about the risk of thrombolytic events, and steps which can be taken to prevent or mitigate its occurrence.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and seeks equitable relief in the form of a medical monitoring program this Court's order that Defendants change the labeling of Ortho Evra™ to appropriately warn of the risk of thromboembolic and/or thrombolytic events.

### EIGHTH CAUSE OF ACTION
#### (Violation of Business & Profession Code Section 17200)

115.    Plaintiffs restate the allegations set forth above as it fully rewritten herein.

116.    Plaintiffs are informed and believe and allege that Defendants, by the acts and misconduct alleged herein, violated Business and Professions Code sections 17200.

117.    California Business & Professions Code Section 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

118.    The acts and practices described herein were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of Business & Professions Code Section 17200. The acts and untrue and misleading advertising

20
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1 set forth in presiding paragraphs are incorporated by reference and are, by definition,

2 violations of Business & Professions Code Section 17200. This conduct includes, but is not

3 limited to:

4         a.    Representing to Plaintiffs, Plaintiffs's physicians and the general public

5 that Ortho Evra™ was safe, fit and effective for human consumption, knowing that said

6 representations were false, and concealing from the Plaintiffs, Plaintiffs' physicians and the

7 general public that Ortho Evra™ has a serious propensity to cause injuries to users;

8         b.    Engaging in advertising programs designed to create the image,

9 impression and belief by consumers, physicians and others that the use of Ortho Evra™ was

10 safe for human use, had fewer side effects and adverse reactions than other methods for

11 osteoporosis, constituted a convenient, safe form for treating osteoporosis and would not

12 interfere with daily life, even though the Defendants knew these to be false, and even though

13 the Defendants had no reasonable grounds to believe them to be true;

14         c.    Purposely downplaying and understating the health hazards and risks

15 associated with Ortho Evra™; and

16         d.    Issuing promotional literature deceiving potential users of Ortho Evra™

17 by relaying positive information and manipulating statistics to suggest widespread

18 acceptability, while downplaying the known adverse and serious health effects and

19 concealing material relevant information regarding the safety of Ortho Evra™.

20     119.   These practices constitute unlawful, unfair and fraudulent business acts or

21 practices, within the meaning of California Business & Professions Code Section 17200, as

22 well as unfair, deceptive, untrue and misleading advertising as prohibited by California

23 Business & Professions Code Section 17500, as set forth herein.

24     120.   The unlawful, unfair and fraudulent business practices of Defendants described

25 above present a continuing threat to members of the public in that Defendants continue to

26 engage in the conduct described therein.

21

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

121.   As a result of their conduct described above, Defendants have been unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars in ill-gotten gains from the sale and prescription of Ortho Evra™ in California, and other states, sold in large part as a result of the acts and omissions described herein.

122.   Because of the fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the Plaintiffs and public by intentionally misrepresenting and concealing material information, the acts of Defendant described herein constitute unfair or fraudulent business practices.

123.   Plaintiffs, pursuant to California Business & Professions Code Section 17203, seek an order of this court compelling the Defendant to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices.

124.   Defendants' acts were willful, wanton, reckless and fraudulent; hence, Plaintiffs are entitled to exemplary damages, inter alia.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and seek compensatory damages, disgorgement, restitution, and exemplary and punitive damages together with interest, the costs of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

### NINTH CAUSE OF ACTION
#### (Violation of Business & Profession Code Section 17500)

125.   Plaintiffs restate the allegations set forth above as it fully rewritten herein.

126.   Plaintiffs are informed and believe and thereon allege that Defendants, by the acts and misconduct alleged herein, violated Business & Professions Code Section 17500.

127.   Plaintiffs hereby seek restitution, as well as and punitive damages against Defendants for their violations of section 17500.

22

128.    California Business & Professions Code section 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

129.    At all times herein mentioned, Defendants have committed the acts of disseminating untrue and misleading statements as defined by Business & Professions Code Section 17500 by engaging in the following acts and practices with intent to induce members of the public to purchase and use Ortho Evra™:

a.    Representing to Plaintiffs, Plaintiffs's physicians and the general public that Ortho Evra™ was safe, fit and effective for human consumption, knowing that said representations were false, and concealing from the Plaintiffs, Plaintiffs' physicians and the general public that Ortho Evra™ have a serious propensity to cause injuries to users;

b.    Engaging in advertising programs designed to create the image, impression and belief by consumers, physicians and others that the use of Ortho Evra™ was safe for human use, had fewer side effects and adverse reactions than other methods for treating osteoporosis, constituted a convenient, safe form for treating osteoporosis and would not interfere with daily life, even though the Defendants knew these to be false, and even though the Defendants had no reasonable grounds to believe them to be true;

c.    Purposely downplaying and understating the health hazards and risks associated with Ortho Evra™; and

d.    Issuing promotional literature deceiving potential users of Ortho Evra™ by relaying positive information and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects and concealing material relevant information regarding the safety of Ortho Evra™.

130.    The foregoing practices constitute false and misleading advertising within the meaning of California Business & Professions Code Section 17500.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

131.   As a result of its false and misleading statements described above, Defendants have been and will be unjustly enriched.   Specifically, Defendants have been unjustly enriched by receipt of hundreds of millions of dollars from the sale and prescription of Ortho Evra™ in California and other states, sold in large part as a result of the false or misleading statements described herein.

132.   Pursuant to California Business & Professions Code Section 17535, Plaintiffs seeks an order of this court compelling the Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, and each of them, as a result of their unfair business practices, and injunctive relief calling for Defendants to cease such unfair business practices in the future.

**WHEREFORE**, Plaintiffs demand judgment against Defendants and seek compensatory damages, disgorgement, restitution, and exemplary and punitive damages together with interest, the costs of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

### TENTH CAUSE OF ACTION
**(Loss of Consortium)**

133.   Plaintiffs restate the allegations set forth above as if fully rewritten herein.

134.   Plaintiffs Donny Wright and Donny Peters, who did not use Ortho Evra™, bring this cause of action for loss of consortium.

135.   By reason of the injuries sustained by Plaintiffs Meloney Wright and Veronique Peters, who did use Ortho Evra™, Plaintiffs Donny Wright and Donny Peters, have been and will continue to be deprived of consortium, society, comfort, protection, and service, thereby causing and continuing to cause grief, sorrow, mental anguish, emotional distress and pain and suffering.

**WHEREFORE**, Plaintiffs Donny Wright and Donny Peters demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together

24
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   with interest, the costs of suit, attorneys' fees and such other and further relief as the Court

2   deems just and proper.

## ELEVENTH CAUSE OF ACTION
### (Punitive Damages)

136.   Plaintiffs restate the allegations set forth above as if fully rewritten herein.

137.   Defendants have repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as to public hazards which should be warned about.

138.   Defendants' acts were willful and malicious in that Defendants' conduct was carried on with a conscious disregard for the safety and rights of Plaintiffs and all others taking Ortho Evra™. Defendants' unconscionable conduct thereby warrants an assessment of exemplary and punitive damages in an amount appropriate to punish Defendants and deter similar conduct in the future.

**WHEREFORE,** Plaintiffs demand judgment against Defendants and seek compensatory damages, and exemplary and punitive damages together with interest, the costs of suit, attorneys' fees and such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, jointly and/or severally, as follows:

a.     For general damages in an amount to be proven at the time of trial;

b.     For special damages in an amount to be proven at time of trial;

c.     For exemplary and punitive damages in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter Defendant and others from repeating the injurious conduct alleged herein;

d.     For prejudgment and post-judgment interest on the above general and special damages;

e.     For disgorgement of profits;

1    f.    For restitution;

2    g.    For costs and attorneys' fees; and

3    h.    All other relief that Plaintiffs may be entitled to at equity or at law, including,

4    but not limited to the funding of a medical monitoring program and compelling Defendants

5    to adequately warn about the risk of thrombolytic and other adverse events, associated with

6    use of Ortho Evra™.

7                                 **DEMAND FOR JURY TRIAL**

8           Plaintiffs demand a trial by jury on all claims so triable in this action.

9    Dated: February 9, 2007                         Respectfully submitted,

10                                                   PHILLIPS & ASSOCIATES

11

12                                          By

13                                             Robert F. Clarke, Esq.
                                             3030 North Third Street, Suite 1100
14                                           Phoenix, Arizona 85012
                                             Attorneys for Plaintiffs
15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

CASE NUMBER: CGC-07-460481  MELONEY WRIGHT VS. ORTHO-MCNEIL CORPORATION

## <u>NOTICE TO PLAINTIFF</u>

A Case Management Conference is set for

> **DATE:**   JUL-20-2007
>
> **TIME:**   9:00AM
>
> **PLACE:**  **Department 212**
> **400 McAllister Street**
> **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

## <u>ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS</u>

> **IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
> (SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges