1   Robert F. Clarke, Esq. (CSBN 79881)
    PHILLIPS & ASSOCIATES
2   3030 North Third Street, Suite 1100
    Phoenix, Arizona 85012
3   Telephone:   (602) 258-8900 ext. 328
    Facsimile:   (602) 288-1632
4   E-Mail:      bobc@phillipslaw.ws

5   Attorneys for Plaintiffs (See signature page
    for complete list of represented parties)

6

7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10  MELONEY WRIGHT, et al.,                Case No. 07-cv-2541-SC

11                 Plaintiffs,             **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
12  vs.                                    PLAINTIFFS' MOTION TO REMAND
                                           TO STATE COURT**
13  ORTHO-MCNEIL CORPORATION, et al.,
                                           The Honorable Samuel Conti
14                 Defendants.             Courtroom 1, 17th Floor
                                           Date:  July 27, 2007
15                                         Time: 10:00 a.m.

16

17                      I.    **INTRODUCTION**

18          Plaintiffs (hereinafter, "Plaintiff" or "plaintiff") filed a complaint in the Superior Court of

19  California against Ortho-McNeil Corporation (hereinafter, "Ortho-McNeil"), McKesson Corporation

20  (hereinafter, "McKesson"), Johnson & Johnson Corporation (hereinafter, "Johnson & Johnson") and

21  Alza Corporation (hereinafter, "Alza"), and John Doe Defendants 1-50 (hereinafter, collectively,

22  "Defendants"), for injuries and damages suffered when Plaintiffs used the Ortho Evra contraceptive

23  patch (hereinafter, "Ortho Evra"), as manufactured and distributed by the Defendants.  McKesson

24  and Alza are "citizens" of the State of California for diversity purposes, and may, from time to time,

25  be referred to "Non-Diverse Defendants".  Johnson & Johnson and Ortho-McNeil may be referred

26  to as "Diverse Defendants".

27          All Defendants have removed the instant case to this Court based solely on a claim of

28  jurisdiction due to complete diversity (28 U.S.C. § 1332).

---

**Memorandum In Support of Plaintiffs' Motion to Remand**          **07-cv-2541-SC**
**Page 1**

By this motion, Plaintiffs seek to remand this case to state court based on the Non-Diverse Defendants being viable defendants as well as the Notice being legally deficient. The burden is on the removing Defendants to prove the allegations in the removal petition. Defendants have failed to meet the high standard required to justify its allegations of fraudulent joinder.

## II.    STATEMENT OF THE CASE

Defendants Ortho-McNeil, Johnson & Johnson and Alza developed, tested and obtained FDA approval for Ortho Evra, a transdermal birth control device. Although each of these Defendant companies maintains a separate corporate entity, they are operationally intertwined beyond a mere manufacturer/distributor relationship.

Contrary to Defendants' assertion that Alza only manufactured the patch, it was originally developed by Alza, a leader in transdermal delivery system (TDS) pharmaceuticals. In addition to Ortho Evra, it developed the Duragesic patch, for the delivery of pain medication. Alza was purchased by Defendant Johnson & Johnson, but retained it's autonomy. (See article written by Dr. Roger W. Cleary, Declaration of Robert F. Clarke in Support of Plaintiffs' Motion to Remand to State Court ("Clarke Declaration"), at Exhibit 1).

Also contrary to Defendants assertion that McKesson only distributed the patch, it was also an active marketer. On December 21, 1998, Defendant McKesson announced its acquisition of Kelly/Waldron and Kelly Waldron/SFA (hereinafter "Kelly/Waldron"). (McKesson Corporation, *McKesson to Acquire Kelly/Waldron and Kelly Waldron/SFA to Expand Marketing, Data Analysis and Sales Support Services for Pharmaceutical and Biotechnology Manufacturers*, press release dated December 21, 1998, Clarke Declaration at Exhibit 2). Kelly/Waldron was a provider of "sales force automation systems and services for pharmaceutical sales forces." Id. McKesson's motivation in making this acquisition is obvious:

> Kelly/Waldron offers a broad array of decision support, marketing research, data analysis and sales and marketing services which enable pharmaceutical and biotechnology manufacturers to more cost-effectively market their products to physicians, nurses, physician assistants, other medical professionals and consumers. These services include return-on-investment studies of promotional activities, developing and implementing direct marketing programs, database processing and management, sales force detailing support and providing proprietary marketing list data. Kelly/Waldron is one of

1    only ten licensees to the American Medical Association master
     database of all U.S. physicians.

2    Id.

3        This acquisition also provided Defendant McKesson control of Kelly/Waldron's Dynastrat®

4    system, a data mining software tool designed specifically for segmentation analysis, promotional

5    activity impact, ROI measurement, physician targeting, forecasting and field sales force

6    optimizations and planning. McKesson clearly was more than the passive "distributor" that is

7    suggested by the allegations in the Notice of Removal.

8        Defendants widely and successfully marketed Ortho Evra in the United States, by

9    undertaking an advertising blitz extolling the virtues of Ortho Evra in order to induce widespread

10   use of the products.  The marketing campaign consisted of advertisements, promotional literature

11   to be placed in the offices of doctors and other healthcare providers, and other promotional materials

12   provided to potential Ortho Evra users.

13       The advertising program, as a whole, sought to create the image, impression and belief by

14   consumers and physicians that Ortho Evra was safe for human use, was more convenient than daily

15   oral contraceptives, and would not interfere with daily life.  Defendants, and each of them,

16   purposefully downplayed and understated the health hazards and risks associated with Ortho Evra.

17   Defendants, through promotional literature, deceived potential users of Ortho Evra by relaying

18   positive information, including testimonials from satisfied users, and manipulating statistics to

19   suggest widespread acceptability, while downplaying the known adverse and serious health effects.

20   Defendants concealed material relevant information from potential Ortho Evra users and minimized

21   user and prescriber concern regarding the safety of Ortho Evra.

22       In early 2005,  Ortho Evra started to be linked to several severe and life threatening medical

23   disorders including, but not limited to, edema, changes in blood pressure, heart attack, stroke,

24   seizures, pregnancy complications and death. The key problem is that the manufacturers, distributors,

25   and designers, the Defendants here, all had a role which unequivocally indicates they knew or should

26   have known Ortho Evra was delivering a dosage of hormones far higher than would be safe.

27       Plaintiffs have alleged causes of action against legitimate local defendants in this lawsuit.

28

**Memorandum In Support of Plaintiffs' Motion to Remand**                    **07-cv-2541-SC**
**Page 3**

1   Plaintiffs contend that McKesson and Alza were integrally involved in the design, sale, advertising

2   and distribution of this product. McKesson has admitted it is a distributor of Ortho Evra. Alza has

3   admitted that it produced Ortho Evra.

4          It should be noted that in the "Vioxx" litigation, McKesson was named a Defendant in

5   thousands of cases. The manufacturer, Merck had agreed to hold McKesson harmless for any

6   liability associated with that litigation. In fact, in a quarterly report to the Securities and Exchange

7   Commission ("SEC") dated November 9, 2005, McKesson stated:

8              As previously reported, the Company [McKesson] has been named
               a defendant in a number of actions brought by plaintiffs who allege
9              that they were injured by *Vioxx*, an anti-inflammatory drug
               manufactured by Merck & Company ("Merck"). As of the end of
10             October 2005, the Company has been named and served in 268 such
               actions. With regard to all such actions, Merck has agreed to defend
11             and indemnify the Company.

12   (McKesson Corporation's SEC Form 10-Q dated November 9, 2005, Clarke Declaration, Exhibit

13   3, at consecutive page 25).

14          This, along with the fact all Defendants are represented by the same counsel, implies that the

15   same such relationship exists between the diverse defendants, Ortho-McNeil and/or Johnson &

16   Johnson, and the California defendants, McKesson and/or Alza, and that there is no controversy

17   among them.

18          In regard to McKesson, the exact same issue of distributor liability and sham joinder was

19   raised and rejected in the related Vioxx cases filed in the California Superior Court for Los Angeles

20   County, JCCP Case No. 4247. (Notice of Ruling (with attached Revised Ruling on Request for

21   Reconsideration by Judge Victoria Chaney), Vioxx Cases, California Superior Court for Los Angeles

22   County, Case No. JCCP 4247, filed on or about May 22, 2006, Clarke Declaration at Exhibit 4).

23          Other California courts, notably in the Central District, have granted remand based upon the

24   same arguments herein raised. (See rulings in Reid, et al., v. Merck & Company, Inc., et al., Case

25   No. CV 02-00504 NM (RZx) (Clarke Declaration at Exhibit 5); Black, et al., v. Merck & Company,

26   Inc., et al., Case No. CV 03-8730 NM (AJWx) (Clarke Declaration at Exhibit 6); Albright, et al. v.

27   Merck & Co., Inc., et al., No. CV 05-4025 JFW (MANx) (Clarke Declaration at Exhibit 7; and

28   Aaroe, et al., v. Merck & Co. Inc., et al., No. CV05-5559 (Clarke Declaration at Exhibit 8)).

1    For the last year or so, the California federal courts, when confronted with removed

2    drug/products liability cases, have neither granted nor denied many motions to remand, but have

3    stayed proceedings pending a ruling on the "conditional transfer orders" filed by the Judicial Panel

4    on Multidistrict Litigation ("J.P.M.L.").  Almost uniformly, the J.P.M.L. has sent these cases to the

5    MDL involved.  It is submitted that the reasoning for such deferrals in Vioxx matters, is that the

6    MDL has been in existence for some time and has pending thousands of remand motions from

7    around the country, and it seemed practical to have that judge make a more globally relevant

8    decision.  However, here, the Ortho Evra MDL, before the Honorable David Katz in the Northern

9    District of Ohio, has only been in existence for nine months and no significant discovery has taken

10   place.  The Vioxx reasoning is not helpful to the Defendants here.  (See Docket Report for MDL

11   1742, Clarke Declaration at Exhibit 9).  However, it is admitted that another case filed by this writer,

12   Morrison v. Ortho-McNeil et al., was transferred to the J.P.M.L, for an ultimate decision as to

13   transfer to the MDL, and this writer has vigorously fought transfer for the same reasons raised in this

14   Motion.  The J.P.M.L. considered transfer of the Morrison matter at its May 31, 2007, hearing

15   session, and this writer is as yet unaware of the decision.

16   This Court must take notice that very recently, Mark Robinson, of Robinson, Calcagnie,

17   Robinson filed a petition for coordination of several Ortho-Evra cases, including the case styled

18   Christopher-Justice v. Ortho-McNeil Pharmaceuticals, Inc., et al., Superior Court of California,

19   County of Los Angeles, Case No. 07-BC 366885.  The petition was granted and assigned the Hon.

20   Emily Elias, as a Judicial Council Coordination Proceeding (JCCP).  (See proposed order granting

21   JCCP status for Christopher-Justice, et al., Clarke Declaration at Exhibit 10).  The same Defendants

22   that filed the notice of removal in this case, are named in that case.

23   ### III.   STANDARD OF REVIEW

24   For removal based on diversity, 28 U.S.C. § 1332 requires complete diversity of citizenship.

25   Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001).  Even if the complete diversity

26   requirement is met, removal is not allowed where one of the defendants is a "citizen of the State in

27   which such action is brought."  28 U.S.C. § 1441(b).  Joinder of a resident defendant is only

28   fraudulent if the plaintiff fails to state a cause of action against that defendant and the failure is

1   obvious according to the settled rules of the state.  <u>McCabe v. General Foods Corp.</u>, 811 F.2d 1336,

2   1339 (9th Cir. 1987).

3          "There is a presumption against finding fraudulent joinder, and defendants who assert that

4   [the] plaintiff has fraudulently joined a party carry a heavy burden of persuasion." <u>Plute v. Roadway</u>

5   <u>Package Sys., Inc.</u>, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001).  Courts have denied claims of

6   fraudulent joinder when there is any possibility that a plaintiff may prevail on the cause of action

7   against the in-state defendant.  <u>Plute</u>, 141 F. Supp. 2d at 1008, 1012.  "In determining whether a

8   defendant was joined fraudulently, the court must resolve 'all disputed questions of fact and all

9   ambiguities in the controlling state law in favor of the non-removing party.'" <u>Plute</u>, 141 F. Supp.

10  2d at 1008 (quoting <u>Dodson v. Spiliada Maritime Corp.</u>, 951 F.2d 40, 42-43 (5th Cir. 1992)).

11  Furthermore, any doubts concerning the sufficiency of a cause of action due to inartful, ambiguous,

12  or technically defective pleading must be resolved in favor of remand; a lack of clear precedent does

13  not render the joinder fraudulent.  <u>Plute</u>, 141 F.Supp 2d at 1008; <u>See</u> <u>Peloza v. Capistrano Unified</u>

14  <u>Sch. Dist.</u>, 37 F.3d 517, 521 (9th Cir. 1994) (courts must interpret general allegations to "embrace

15  whatever specific facts might be necessary to support them"); <u>Little v. Purdue Pharma, LP</u>, 227 F.

16  Supp. 2d 838, 847, n. 12 (S.D. Ohio 2002) ("in light of the heavy burden on defendants to show the

17  non-diverse defendants were fraudulently joined, it seems to this Court that a finding of fraudulent

18  joinder should not be based on factual deficiencies within the pleadings which are correctable by

19  amendment").

20          Here, Defendants must show by clear and convincing evidence that under no circumstances

21  could Alza or McKesson be liable for any of Plaintiffs' claimed injuries.

22              **IV.    <u>LACK OF SUBJECT MATTER JURISDICTION</u>**

23          Federal diversity jurisdiction requires that all parties to the action be "citizens of different

24  states" or "citizens or subjects of a foreign state." 28 U.S.C. § 1332.  28 U.S.C. § 1447(c) governs

25  the procedure after removal, and allows for remand of any action where the district court lacks

26  subject matter jurisdiction.  Specifically, 28 U.S.C. § 1447(c) states in pertinent part: "If any time

27  before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall

28  be remanded."  Defendants' removal is improper because the district court lacks subject matter

1  jurisdiction as both local corporations have been  properly joined.

2      Defendants removed this action based solely upon diversity jurisdiction. They claim that the

3  parties to this action are completely diverse because the local defendants, Alza and McKesson, are

4  sham defendants.  To succeed, Defendants' must point to some California law that clearly indicates

5  joinder is fraudulent.   Plaintiff has sued McKesson and Alza under products liability, fraud,

6  warranty, strict liability and negligence principles as well as under the Business and Professions

7  Codes §§ 17200 and 17500, which are recognized causes of action against distributors and designers

8  of medications in the State of California.  See J. Chaney's ruling, Clarke Declaration at Exhibit 4.

9      Defendants seek a ruling that would in effect decide substantive factual disputes and

10 terminate Plaintiffs' causes of action against every local defendant.  The effect of allowing removal

11 would be to find there is no way Alza and/or McKesson could ever have any liability here.  However,

12 a district court must not decide substantive factual issues in order to answer the threshold question

13 of whether joinder of an in-state defendant is fraudulent.  Green v. Amerada Hess Corp., 707 F.2d

14 201, 204 (5th Cir. 1983).  The only issue the court should address is its own jurisdiction.  Id. at 204.

15     The removing defendant has the heavy burden of alleging and proving the non-diverse party's

16 joinder is "sham" or "fraudulent."  Jernigan v. Ashland Oil Co., 989 F.2d 812, 815-816 (5th Cir.

17 1993); Boyer v. Snap-On Tools Corp., 913 F.2d 108 (3rd Cir. 1990).  In order to establish the

18 plaintiff fraudulently joined an in-state defendant for purposes of defeating removal jurisdiction, the

19 defendant must show either (1) that there is no possibility that the plaintiff would be able to establish

20 a cause of action against the in-state defendant in state court, or (2) that there has been outright fraud

21 in plaintiff's pleading of jurisdictional facts.  Freeman v. Bragunier Masonry Contractors, Inc., 928

22 F. Supp. 611 (Dist. Md. 1996); Ford v. Elsbury, 32 F.3d 931, 938 (5th Cir. 1994); Green v. Amerada

23 Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983).

24     As is more fully set out below, the allegations of the Complaint state causes of action against

25 McKesson and Alza, and the ruling of Judge Chaney, coupled with substantive law, support that they

26 are not fraudulently joined.

27 / / /

28 / / /

1
2

## V.   PLAINTIFFS HAVE ALLEGED A VALID CAUSE OF ACTION
## AGAINST MCKESSON

3   Plaintiffs have alleged all causes of action against both diverse Defendants and McKesson.

4   Defendants' argument that Plaintiffs have not alleged any facts against McKesson relies exclusively

5   on the fact that the Complaint identified both the other Defendants and McKesson as "defendants"

6   in their allegations.   Defendants then makes a conclusory argument that the use of the term

7   "defendants" should be disregarded because it is contradicted by Plaintiffs' specific allegations

8   against Ortho-McNeil.  This is simply not true.

9   First, and foremost, Defendants' argument is directly contrary to well established strict

10  liability law in California.  A distributor, unlike pharmacists, is liable for failure to warn.  Anderson

11  v. Owens-Corning Fiberglas Corp., 53 Cal. 3rd 987, 281 Cal. Rptr. 528, 810 P.2d 549 (1991); see

12  Jimenez v.Superior Court, 29 Cal. 4th 473 (2002).  Therefore, specific allegations of failure to warn

13  can be made against each.

14  Second, it is not inconsistent to argue that *both* Ortho-McNeil and McKesson were aware,

15  or should have been aware, of the scientifically knowable risks of Ortho Evra.  McKesson is neither

16  a pharmacy retailer nor a physician, which are specified as parties not able to be sued for failure to

17  warn.  See Order Denying Plaintiff's Motion to Remand, In re: Phenylpropanolamine (PPA)

18  Products Liability Litigation, MDL No. 1407, Docket No. C02-423R, Slip Op. (W.D. Wash. Nov.

19  27, 2002).  McKesson is a sophisticated pharmaceutical distributor, in the direct chain of distribution

20  of Ortho Evra, that knew or should have known of the dangers of Ortho Evra and warned Plaintiffs

21  of those dangers.  Defendants' reliance on any case precluding claims against doctors and drug stores

22  is misplaced.

23  McKesson, by and through its agents, worked with the diverse Defendants to develop and

24  distribute Ortho Evra without appraising itself of known or knowable dangers and without

25  adequately warning Plaintiffs of those known or knowable dangers. It had a program in place to

26  assist in product promotion.  This is not a company that was merely a conduit for the patch.  It was

27  actively engaged in promotion and cannot hide behind the cloak of innocence which could attach

28  under Defendants' strict interpretation of the lack of fault that they feel could be attached to a

1   distributor which is merely a clearinghouse. c.f., Barth v. B.F. Goodrich Tire Co., 265 Cal. App. 2d.

2   228 (1st Dist. 1968).

3       Defendants cite Skinner v Warner-Lambert Co., Case No. CV-03-1643-R(RZx) (C.D. Cal.

4   2003) and Barlow v. Warner-Lambert Co., Case No. CV-03-1647 (C.D. Cal. 2003), to support their

5   position. In both cases decided on the same day by Judge Real, the Court refused remand indicating

6   that the law in California would not permit a cause of action against McKesson. We do not know

7   if the Skinner and Barlow cases had some unusual facts which caused Judge Real to rule as he did.

8   We do not know if McKesson's aggressive marketing and promotion was brought to his attention.

9   We cannot possibly know if Judge Real may have decided to grant remand had the Skinner and

10  Barlow plaintiffs named the designer, Alza, as a party, as was done in the case at bar. But we do

11  know his decision is not universally accepted and because he ruled the same way on the same day

12  in the same set of cases for two separate plaintiffs, is a far cry from reliable precedent. This writer

13  submits that if there were other cases decided in the last 4 years that supported their position, the

14  excellent attorneys for Defendants would have found them. While Judge Real's lone rulings have

15  not been tested at the appellate level, Judge Chaney's decision, as well as others cited in this

16  Memorandum, disagreed. That alone must be sufficient to support remand.

17      There is absolutely nothing inconsistent in the pleadings. Plaintiffs have adequately pled

18  facts to state causes of action against *both* Diverse and Non-Diverse Defendants.

19

20  **VI.    PLAINTIFFS HAVE ALLEGED A VALID CAUSE OF ACTION AGAINST ALZA**

21      Plaintiffs have alleged a cause of action against Defendants for design defect. Simply, it is

22  alleged that the patch was delivering too much estrogen in relation to other available hormone

23  replacement birth control drugs, including one sold by the Defendants.

24      The point is that the warning owed to the physician must be adequate, but if the design is also

25  defective, the warning is not an issue. *See* West v. Johnson & Johnson Products, Inc., 174 Cal. App.

26  3d 831, 220 Cal. Rptr. 437 (App. 6 Dist. 1985) (in case alleging plaintiff harmed by poorly designed

27  contraceptive devise, a negligent design theory is a separate claim from failure to warn).

28

---

In a remarkably similar fact situation, but not in California, in <u>Brochu v Ortho Pharmaceutical Corp.</u>, 642 F.2d 652, (1st Cir. 1981) (applying New Hampshire law), the Court sustained a verdict against the manufacturer of an oral contraceptive, "Ortho-Novum 2 mg," by a user who sustained a cerebral thrombosis, where the action sounded in strict liability and fraudulent-misrepresentation based upon an allegation of a design defect. Noting that at the time that the plaintiff suffered her stroke, the defendant manufactured four other oral contraceptives that contained smaller amounts of estrogen than the contraceptive used by the plaintiff and that there was uncontroverted testimony that all of the manufacturer's oral contraceptives of estrogen were equally effective in preventing conception, the court stated that there were evidentiary grounds to support the jury's finding that the type of birth-control pills in question which contained the higher estrogen level was defective in design. The court further found that there was sufficient evidence to support the jury's finding that the oral contraceptive was the most likely cause of the plaintiff's stroke.

Further, Alza, or any other Defendant may be liable under the "Consumer Expectations Test". As a general proposition, the plaintiff will be able to establish the defectiveness of a product's design under the consumer expectations test by presenting evidence concerning the following matters: (1) the use of the product by the person injured; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety. <u>Campbell v. General Motors Corp.</u>, 32 Cal. 3d 112, 184 Cal. Rptr. 891, 649 P.2d 224 (1982). This has nothing to do with a failure to warn, and is not implicated in a learned intermediary defense.

## VII.     THE LEARNED INTERMEDIARY DEFENSE IS INAPPLICABLE AT THIS STAGE

One of the issues Defendants raised is that they claim the duty to warn runs only to treating physicians. Plaintiffs do not agree.

Initially, the ruling by Judge Chaney disposes of the learned intermediary doctrine at this stage of the litigation, as the mere allegation that the warnings were insufficient in total, means

1   Defendants cannot use it to foreclose any possibility of recovery before that issue is made the subject

2   of discovery. It may be that whoever hears the evidence may conclude that the learned intermediary

3   defense may be implemented as a matter of fact or law.  That is no support for removal in the face

4   of a valid remand motion.

5       Secondly, the Complaint, in part, alleges that Defendants overpromoted Ortho Evra.  It is

6   absolutely clear Ortho Evra was advertised and promoted as a safe and effective method of birth

7   control and the only transdermal delivery system for such product.  Plaintiffs allege that this alleged

8   overpromotion has nullified what warnings Defendants may have given regarding this drug.  On the

9   basis of these allegations, Plaintiffs argue that if Defendants' overpromotion caused the treating

10  doctor  to prescribe Ortho Evra despite any possible awareness of the alleged risks that Ortho Evra

11  can cause thrombolytic events and myocardial problems.

12      An overpromotion theory is one way that a plaintiff in a failure-to-warn case can overcome

13  the manufacturer's argument either (1) that it provided adequate warnings or (2) that the doctor's

14  decision to prescribe a drug despite his awareness of its dangers was an intervening cause sufficient

15  to vitiate the manufacturer's liability. *See* Stevens v. Parke, Davis & Co.*, 9 Cal. 3d 51, 65, 107 Cal.

16  Rptr. 45, 507 P.2d 653 (1973) (an adequate warning to the medical profession may be wholly or

17  partially nullified by overpromotion of the drug through a vigorous sales program which may have

18  the effect of persuading the prescribing doctor to disregard the warnings given.); *see also*, Id. at 69,

19  107 Cal. Rptr. 45, 507 P.2d 653 ( if it was reasonably foreseeable that physicians, despite awareness

20  of the dangers of Chloromycetin, would be consciously or subconsciously induced to prescribe the

21  drug when it was not warranted, the manufacturer cannot be relieved of liability because of the

22  intervening act of the treating doctor who prescribed the drug while cognizant of the risks ).

23      As stated above, the learned intermediary doctrine does not apply to the "Consumer

24  Expectations Test". *See* Campbell v General Motors Corp, *supra*; *see also*, Arnold v. Dow Chemical

25  Co., 91 Cal. App. 4th 698, 110 Cal. Rptr. 2d 722 (2d Dist. 2001) (rev. den. Nov. 14, 2001).

26  /  /  /

27  /  /  /

28

## VIII.    THE COURT SHOULD REALIGN THE DEFENDANTS
## IN SUPPORT OF REMAND

Where jurisdiction is based on diversity of citizenship, the court may ascertain whether the alignment of the parties as plaintiff and defendant conforms with their true interests in the litigation. Chase Nat. Bank of City of New York v. Indianapolis Gas Co., 314 U.S. 714, 62 S. Ct. 356 (Mem), 86 L. Ed. 569 (1941); American Motorists Ins. Co. v. Trane Co., 657 F.2d 146, 149 (7th Cir. 1981). Realignment is proper when the court finds that no actual and substantial controversy exists between parties on one side of the dispute and their named opponents, although realignment may destroy diversity and deprive the court of jurisdiction. Chase Nat. Bank, 314 U.S. 714. In conducting its inquiry, the court may look beyond the pleadings and consider the nature of the dispute in order to assess the parties' real interests. American Motorists, 657 F.2d at 149.

Here, based upon Merck's willingness to hold McKesson harmless, and a probable management link, this Court should find there is no reason that would not happen here. There is hardly an actual nor substantial controversy between any other Defendant and McKesson. This is also evidenced by the use of one defense counsel.

As to Alza, the company which designed the patch, it is a subsidiary of Johnson & Johnson. Again, that means it has no controversy with that diverse Defendant. There is a heavy burden upon Defendant here which has not been met. Even though to realign may "destroy" diversity, realignment is legally available and most assuredly equitable.

## IX.    REMOVAL OF THIS CASE IS COUNTER TO PRIOR RULINGS IN THE
## CENTRAL DISTRICT ON THIS VERY ISSUE

The arguments in support of removal presented by Defendants in the case at bar[1] were previously rejected when raised by Merck in support of removal of Vioxx cases in Reid, et al., v. Merck & Company, Inc., et al., Case No. CV 02-00504 NM (Rzx) (Clarke Declaration at Exhibit

---

[1]More specifically, the identical argument upon which Defendants base their removal in this matter, that McKesson is a fraudulently joined defendant, has been rejected numerous times in other courts in the State of California.

1    5); <u>Black, et al., v. Merck & Company, Inc., et al.</u>, Case No. CV 03-8730 NM (AJWx) (Clarke

2    Declaration at Exhibit 6); <u>Albright, et al. v. Ortho-McNeil Corporation, et al.</u>, No. CV 05-4025 JFW

3    (MANx) (Clarke Declaration at Exhibit 7); and <u>Aaroe, et al., v. Merck & Co., et al.</u>, No. CV 05-5559

4    (Clarke Declaration at Exhibit 8).

5         Further, as Judge Chaney in the California JCCP for Vioxx has ruled that joining McKesson

6    was appropriate in the Vioxx cases, that should preclude the same argument here.

7         Defendants have argued that other District Courts have agreed that diversity is appropriate

8    in the same circumstances. None of the cases cited, however, were from California (the cases were

9    from Mississippi, Texas, Illinois, Louisiana and Hawaii). McKesson is headquartered in California,

10   so the facts of those cases cannot apply to the facts here.

11   ## X.    THE FORMATION OF A CALIFORNIA JCCP IS DISPOSITIVE OF THE

12   ## JURISDICTION ARGUMENT

13        Recently, counsel for plaintiff, Mark Robinson, in the case styled <u>Christopher-Justice v.

14   Ortho-McNeil Pharmaceuticals, Inc., et al.</u>, Superior Court of California, County of Los Angeles,

15   Case No. 07-BC 366885, successfully moved for JCCP status for a case with the same allegations

16   and defendants as the one at bar. The procedure in California for coordination has been in place for

17   years. See Cal. Code Sections 404, <u>et seq</u>. The procedure requires the hearing judge should grant

18   the petition if he/she initially finds that common questions of fact or law predominate. Here, there

19   are similar claims of defect warnings and other averments related to California products liability

20   litigation. Secondly, the hearing judge must determine the cases are manageable and will not cause

21   either side to be prejudiced. Here, even though there is an MDL in Ohio, the parties proved that the

22   second hurdle was overcome. At this time, Mr. Robinson's firm, Robinson Calcagnie & Robinson,

23   which has a stellar reputation, is teaming up with Steven Skikos' firm, Lopes Hodes, an equally first

24   class firm, to spearhead the litigation. The defendants will be ably represented by Tucker Ellis in Los

25   Angeles and Drinker Biddle & Reath in San Francisco, again, first class counsel. It was abundantly

26   clear to Judge Kuhl that coordination was fair to both sides. See <u>McGhan Medical Corporation v.

27   Superior Court of San Diego County</u>, 11 Cal. App.4th 804, 14 Cal. Rptr.2d 264 (1992); <i>see also</i>,

28   <u>Keenan v. Superior Court</u> 111 Cal.App.3d 336, 341, 168 Cal. Rptr. 561 (1980).

1    Finally, there was no question that if any alleged victim wished to stay away from California,

2    the MDL and New Jersey (New Jersey has an open mass tort litigation in Defendant Johnson &

3    Johnson's home state) options are available.  Finally, in a recent hearing before Judge Katz, in Ohio,

4    he made it clear that Judges Garuto in New Jersey and Judge Emily Elias in California, were invited

5    to coordinate any proceedings required and they were invited to attend the Science Tutorial to be

6    held in the MDL in the middle of July.  The New Jersey liaison counsel, Ellen Relkin, and California

7    liaison counsel, Brian Kabatek, offered support for both litigations, with no objections from lead

8    counsel for Johnson & Johnson.

9    In light of the fact Defendants have either lost that motion or filed no protest,  and the same

10   issues and defendants are involved, there can be no question, the Courts of California do not feel

11   there are any sham defendants here.  Such a conclusion indicates for the purposes of removal and

12   remand, removal was improper and this Court has no subject matter jurisdiction.

13                           **XI.   <u>CONCLUSION</u>**

14   Defendants have failed in every category necessary to sustain removal.  They have not met

15   any burden, let alone the very stringent one necessary to support its position.  Plaintiffs respectfully

16   request this Court grant the Motion to Remand.

17   Dated: June 4, 2007                    **PHILLIPS & ASSOCIATES**

18

19                                          By s/Robert F. Clarke
                                            Robert F. Clarke
20                                          E-mail: bobc@phillipslaw.ws

21                                          Attorneys for Plaintiffs Meloney Wright,
                                            Donny Wright, Danyele Bacon, Diana
22                                          Burk, Tina Leiphart, Nubia Flores, Molly
                                            Kirkpatrick, Reynalda Alvarado, Gayle
23                                          Anderson, Veronique Peters, Donny
                                            Peters, Lakeya Baskom, Tiffany Lillie,
24                                          Lorraine Fontanilla-Webber, and Ashley
                                            Webber.

25

26

27

28

---

**Memorandum In Support of Plaintiffs' Motion to Remand**          **07-cv-2541-SC**
**Page 14**

1

_____        <u>CERTIFICATE OF SERVICE</u>

2    I am employed in the County of Maricopa, State of Arizona.  I am over the age of eighteen

3  (18 ) years and am not a party to the within action. On June 4, 2007, I electronically filed the

4  foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such

5  filing to all other parties appearing on the  docket sheet as follows:

6

Brenda Buonaiuto
Drinker Biddle & Reath LLP

7<br>
<u>Brenda.Buonaiuto@dbr.com</u>
Attorney for Defendants

8

I sent a copy of the foregoing by FedEx Express Priority Overnight delivery to:

9

10

Charles F. Preuss
Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor

11<br>
San Francisco, CA 94105
Attorney for Defendants

12
    I declare that I am employed in the office of a member of the bar of this court at whose

13  direction the filing and service was made.

14
DATED:  June 4, 2007           s/Ron Foltz_____

15                Ron Foltz, Paralegal to Robert F. Clarke

16

17

18

19

20

21

22

23

24

25

26

27

28